Case number 16-3108 United States of America v. Michael M. Monzel, Appellant. Ms. Tarimina, the Appellant. Mr. Hansford, the Appellee. Good morning. Good morning. May it please the Court. Rosanna Tarimina for Appellant, Mr. Michael Monzel. I'd like to reserve two minutes for rebuttal. This morning marks the third appearance before this Court for Mr. Monzel and the Government relating to issues surrounding the determination of restitution for child pornography victim Amy. As Amy herself has recognized and as the Supreme Court recognized no less than 11 times in its opinion in Paroline, the images of Amy's abuse suffered at the hands of her uncle have been viewed and will continue to be viewed by thousands upon thousands of individuals, not just in this country, but around the globe. In our first appearance before this Court in Monzel 1, this Court affirmed the District Court's adoption of the Proximate Causation Standard, the same standard that the Paroline Court eventually did adopt, and it also agreed with the District Court's factual finding that the Government had made no showing as to the amount of Amy's losses attributable to Mr. Monzel. This Court remanded the case because the District Court's $5,000 award was inconsistent with that factual finding. In doing so, in remanding the case, this Court stressed two specific things. First, that in fixing an amount of restitution, the District Court must rely on some principled method for determining the harm that Monzel caused Amy. And it expressed expectation that the Government will do more this time around to aid the District Court in its endeavor, especially in light of its statutory burden to do so under Section 3664E. So can we talk about that remand instruction? Yes. It's a pretty strong instruction, but it's pre-Paroline. And in Paroline, the Supreme Court was much more open-ended, pragmatic, said there's no one perfect way of doing this, and seemed to give District Courts a lot more leeway. I don't believe that the Supreme Court in Paroline gave the District Courts any more leeway. In fact, I think that the factors it set forth were much more specific than anything that this Court did say in Monzel. In addition, though there is discretion in Paroline, and though Paroline does recognize that there may not be one precise correct answer to this question, the fact that there may not be one correct answer does not mean that there is not a wrong answer. And the wrong answer here certainly is $7,500. But Paroline gave us some wrong answers. One wrong answer is a trivial amount. I don't believe that that is part of Paroline's holding, first of all. So several things on the Supreme Court's discussion of trivial. First of all, that discussion is in a section of the opinion that is not essential to the holding of Paroline, which was on causation. So you think the District Court could have made the calculation that the Chief Justice made in dissent and said, there's 71,000 images, one over 71,000, I'm awarding $47. That would be lawful. And I'll explain why. One, because there's nothing in 2259 to prevent that. Two, to be clear, that calculation that the Chief Justice did was not the Chief Justice's calculation. It was Amy's calculation. I understand, but he embraced it and the majority seemed to disagree. I don't believe that the majority disagreed with that particular calculation. What would be a trivial award? So I think trivial is relative. If someone steals $2 from me and the court awards me $2 in restitution, though it's a low amount, it accurately reflects the damage that I've been caused. So if $47 is an accurate representation of the damage caused by Mr. Monzel, then it's not trivial. In context, it's 100%. The District Court said, acknowledged, that each viewing re-victimizes Amy and others. Yes. And so it does seem to me trivial and unhinged from that determination to say that, okay, the trauma caused, reignited by each viewing, is $47. I don't... No one can say that about this type of trauma, can they? Amy says that about this type of trauma. No, no, she just said, look, here's a consequence of an approach. She doesn't say... She said that is the consequence of the approach that was ultimately adopted by... She did not say, I only suffered $47 worth of damage on each view. I believe that that is exactly what her representation is. It's essentially a warning to the Supreme Court. Because, to be clear, if we step back into the context of how her statement was made, she was asking the court to adopt the joint and several liability causation standard and have each defendant responsible for her full amount of damages. And so she said to the district court, if you adopt the proximate causation standard, this is the implication of that. Because any... Right, this could be the implication of adopting a legal argument with which I disagree. That is not the same thing as saying I acknowledge that I was only $47 damaged by each individual possessor. That's what I thought you were saying. I do believe that that is an acknowledgment. If you look at how many... She has a static damage assessment. So her static damages are $3.2 million. That is the assessment of the damages she will experience until she is 80, essentially. Let me ask you, where can we find that? Because that would be an abrupt shift in her position, and I'd like to be clear about that. Where can you find which... That she is embracing the trivial amount, $47. Not $47, but the trivial amount. Sure, the $47... That's all she's seeking. She did not appear in this case. I understand that, but you made a representation in response to Judge Millett. I only meant to say that that was my interpretation of her representation in the court. We don't know what she was seeking in this case because... We actually do, don't we? Because this case has been here many times, and the district court judge has been on this case for, what, eight years? Yes. So Amy has made representations in formal filings before the court. Yes, she has. And, in fact, she made the representation in the Manziel 2 briefing that the government's 1 over N calculation was a fiction and that she was being damaged by far more people than just the NN that was represented. But to be clear, Amy, this is the third time that we're before this court. This is the first time that we're before this court without a representative from Amy. There was no representative speaking on Amy's behalf in this particular remand. So, yes, as far as we know, we know that Amy has requested the full amount of her damages, which Caroline says that she cannot receive, and we know that Amy has otherwise requested $150,000 in damages in accordance with Masha's law, which this court has also rejected and which the district court rejected. But we don't really have an actual request in this case. Whereas if you do look at, examine the other district court cases, victims often make a more specific request. The government often makes, almost routinely makes a specific request. Let me ask you that. You argue that it's a conditional award in that the government has a burden of proof. Yes. And you interpret that, as I understand it, to require the government to tell the district court, we think the appropriate amount is a specific dollar amount or maybe a range. I think that the government, there are two prongs to the government's burden. The government, it's a statutory burden. The statute says that the government must demonstrate the amount. And in order to do so, I think the government has, again, there's two prongs. The government must provide evidence and data, and it also must provide a methodology. Now, do I, is the fact that there is, that the government alone, is the fact alone that the government didn't provide an amount, the necessary or sufficient here? No. But the government, but there is not evidence and data especially, and I can't be clear about this, disaggregating the losses caused by Amy's uncle and the initial abuse and the initial distribution, and also disaggregating the losses caused by distributors versus viewers. And Mr. Monzel here was only a viewer of one image, which means that he is the very least culpable in comparison to the rest of the thousands of offenders. How do you disaggregate that? In other cases, there have been expert reports, psychologists who will interview the victim, and to be clear, this would only have to be done one time. This is not something that would have to be done over and over again so that it would be a burden on the victim or the government. But in other cases, in the DISH reports, I think Oliviere is one of them, there's other cases where a psychologist has reviewed the reports, has interviewed the victim, and has made an assessment. Are you familiar enough with the record in this case to know that there is no such assessment in this case? Yes, yes, and that is one of the greatest flaws that we find in the government's evidence. I want to go back. How is a therapist with any real scientific certitude going to disaggregate a lifetime of therapy that goes up and down, and her needs go up and down based on stressors in her life, learning more about exposure? How is anyone supposed to say, ah-ha, let's see, five years' worth of therapy for possessions, for distributors? I don't think that it's like that, Judge Millett. I think, in the case of Oliviere, what the psychologist did was say, I think 50% of this victim's damages are caused by the initial abuse and the initial distribution. What I'm hearing from her is that she's... But they're just interrelated. I don't know that they're segregable. Well, it certainly wouldn't have occurred but for the abuse. And if someone's suffering because of the abuse, then that damage is certainly different than the damage caused by a single abuse. But we're not doing but-for causation here. We're not doing but-for. We're doing proximate causation here. Absolutely, absolutely. We do not argue but-for causation. We are simply arguing that you would have to take out the amount of damages that the initial abuse caused her. And I think everyone would agree that that is the real impetus here. But let me ask you, given the record in this case where there are these interviews of Amy, where there are at least some status reports where she's recovered, she's relapsed, that type of thing. And there's certainly enough description of the uncle versus other types of... Isn't there enough of a district court in applying the paradigm factors to take into account that your client was not a distributor? He possessed one photograph. And do it that way because even you acknowledge that, as I understand it, you call an expert, the other side calls another expert. You know, I mean, Judge Millett's questions are getting to the heart of what we're trying to do. And the problem, it seems to me, that everybody's been struggling with in this case is the statute. And the Supreme Court, it seems to me, struggled too. But following the majority opinion, why isn't what happened here exactly what the Supreme Court contemplated would happen, given that we know that very bright jurors can come up with all kinds of different theories about a better way to do something? Well, we don't know what the district court's theory was. We have no way of knowing where she got the $7,500 figure. So what would you have expected her to do? I would have expected... Have a factuarial table, something that specific? No, I would have expected her to do something similar to what Amy did. I do think that that, and to what we proposed to her. But she said she had acknowledged that $5,000 was less than the damage. She had already made that finding. But this court found that essentially she couldn't make that finding. It was based on no evidence in the record. And so it went back, and the government said, well, we can't provide certain types of evidence. And we challenged that assertion. That is simply untrue. Well, I suppose if they stopped everything else they were doing and did very... I didn't stop everything else I was doing. I simply looked at Amy's brief, and I took the figures from there. It wasn't there before the district court. Right, but it wasn't there with the government's imprimatur. The fact that the government came... Why does it have to be the government's imprimatur? That's not evidence. I would say that that's the way we were harmed. The court didn't even... We put all of that information in front of the court, and the court didn't even acknowledge it. All she said about those particular factors were that the government said that it can't come up with anything, and I accept that. Nothing in the Supreme Court said they have to. They said, well, maybe you can try these numbers or that numbers. But what else... Just to be clear, I'm really interested if you have been able to find, how is it at all knowable how many visual abusers there are? How many people are going to have looked and are going to look at her photograph? It is not knowable. It is not knowable. It is estimatable. That is why the Supreme Court... It's guessable is what it seems, not estimable. I don't believe it's guessable if you pick a number out of the air. That's arbitrary. I'm picking a number out of the air. An estimate or a prediction based on underlying data may not be precise. That's not precise mathematical. What underlying data? No one knows in an Internet era how many people are looking at these photos. And to say that you can tell based on arrests how many people are doing it seems to me a wink and a nod because that's who we happen to catch. It's an international problem, as you've said. Essentially, yes, but all that is is an admission that anything that we would come up with would grossly, grossly underestimate the damages that is out there. Not the damages. It would underestimate the number of people who are damaging her. It would overestimate the damages. It's underestimating the number of people who are damaging her. But if you take seriously, as I do, her statement that each view is a re-victimization of her. Every time she knows that someone is viewing it, it's a re-victimization. It brings the whole episode back and causes concerns about also being used to her. These images being used to hurt other people, that type of pain, then I don't know how we can dismiss that just based on, well, the more people that are hurting you, the less anybody owes if each person's view is in fact inflicting serious harm. But again, she only has a defined universe of harm. And if you allow courts to do what the district court did, then what you're doing is allowing other offenders down the line, once she is made whole, to pay no restitution whatsoever. Because those people, and the Paroline opinion recognizes that. In fact, it recognizes that explicitly. It says... Are you aware of any victims who have been completely compensated so there's nobody who's still having to pay? There are. Tara, which is one of the victims in this case, she withdrew her request for restitution early on in the proceedings because she had been made whole. Vicki, there is one opinion in the district court that denies her restitution because it found that she had been made whole. There are victims that don't seek restitution anymore because they have been made whole. So, yes, there are instances. It just seems that you've got so many perpetrators. No one knows who's going to get arrested. No one knows who's going to get arrested and convicted. No one knows who's going to get arrested, convicted, and have the money to pay. And maybe somebody gets, it's not even the right word, but fortunate in this very narrow sense that somebody gets arrested who's really wealthy and pays it off. But that seems to me that you have to factor into that big number you have who's going to get caught within our jurisdiction and ever have the resources to pay and actually pay. But that's antithetical to Paroline. Paroline's essential holding, the essential holding of Paroline, is that someone cannot be held liable for damages that he did not proximately cause, and that were proximately caused by thousands and thousands of others. Do you disagree that the proximate harm that your client caused is that each view was a re-victimization? I, well, another thing that, earlier on you said that, and when she finds out. All right, go ahead. Well, I don't disagree with that, but if the court, that statement was accepted in Paroline. It was in the Paroline's majority, I believe. But yet the Paroline majority rejected what Amy was asking for, which was her entire damages. If you buy that, that essentially each view, it causes her entire loss amount, then we wouldn't have had Paroline, and Amy would have won. Would you agree that if we actually were able to come up with a number of everybody in the world who's seen these, that we're not even talking $47, we'd be lucky to be talking a penny? I would absolutely agree. I would absolutely agree. Should the perfect be the enemy of the good? No. We're here because $7,500 is wrong. So it's a penny or less than a penny? If you are asking me what do I think a correct calculation of, under Paroline would be, I think that that is, we did calculations. It may not be a penny. It may be $0.16 or something. You can't be counting everybody. You can't possibly be counting everybody then in the world. Right, right. No, that's true. That's true. So if you're asking me what is the perfect, then I will say that. If you ask me what is the good, I say not $7,500. But how are someone supposed to decide between a penny or less than a penny and $7,500? Well, we'd have to examine the methodology, and we don't have that here. What methodology are you proposing? I thought you were proposing a methodology that leaves it at a penny or less. I'm proposing a methodology. That is the methodology that I think is correct. Now, the only thing in Paroline that would undermine that is the, I think, internally inconsistent and dicta suggestion that if a court comes up with that analysis, does exactly what Paroline says, and says, let's determine what this person's aggregate or, sorry, a portion share of damages are, accepting this aggregate causation model that the Supreme Court adopted in Paroline, and the court comes up with $0.16, $47, and then is the court, based on what is the court supposed to look at to artificially in arbitrage rate that number? You're telling us that it can't be $7,500, and that under the model you think is the correct one, if I heard you say that, it will be a penny or less. So I don't understand how then you can go, well, I get that. Nobody likes that, but it sure can't be $7,500. We have to have a basis for reversal, some basis for reversal here, and I don't know how something less than $7,500 is any more directionless than you describe the government's actions in this case. My proposed, first of all, we don't have the burden of proof in this case. The government does. And my suggestion, you don't have to accept my suggestion. So not in the district court, but on appeal, you're trying to overturn the district court's decision here, so it's your job to identify what the district court did wrong, and if what they did wrong was not use a methodology at least to a penny. No, what the district court wrong is fail to identify any methodology, fail to, there's numerous factual inconsistencies. Didn't the Supreme Court say you don't have to have a particular methodology? Methodologies aren't evidence. No, but the Supreme Court didn't say that you don't have to have a particular methodology. Did it say you have to have a methodology? I didn't read it that way. The Supreme Court rejects arbitrariness, so I would imagine the only way to be non-arbitrary would be to employ a methodology. Now, if we're using the word methodology as synonymous with a mathematical equation, then I don't think that those two necessarily are synonymous. So the court said that you don't have to use a precise mathematical equation. Or it said you need not use a rigid formula, if doing so would result in these trivial restitution awards. And, again, I believe that that statement is internally inconsistent with the actual holding of Paroline, and that this is dicta. You've said a number of times dicta. Yes. Do you believe everything in that opinion that came after proximate causes of the test is dicta? I think that starting essentially at head note 18 is dicta. That is, so is that everything in the opinion other than the finding that proximate cause is a governing legal standard? No. Well, and if I can explain why. Yes. So that's all of the fact and factor tests they set out. That's all dicta. Yes. Well, I think that's a suggestion, certainly. It's not part of the, I don't believe it's part of the holding. And to be clear, the... Wait, I just want to, I'm sorry. I really do want to make sure I'm absolutely reading you correctly. Everything other than the determination of proximate cause is a legal test. All the analysis of, well, how does one apply proximate cause? No, no, no, no. That's within the holding. I misunderstood you. So where? Yes, so how does one apply the proximate cause test, which gets into the adoption of the aggregate causation model? So if, I would say head note 18 in the Paroline opinion. To be clear, I don't think... So we're holding that it can't be a token or nominal amount. That's a holding. I'm sorry. When you say 18, that's the paragraph that begins, there remains the question. There remains the question of how. And right a few lines before that is where we say it would not, however, be a token or nominal amount. Yes, so that's holding binding on us. Token or nominal. There are aspects of things above 18 that certainly aren't necessary to the court's opinion, but if you're asking me to try to find a demarcation. Any analysis is integral to its holding. Integral to its holding, yes. Right? And I'm describing what proximate causation means, because proximate causation is legal causation. And they're explaining what it means in this context. And it means not trivial amounts. It has to be an amount that's going to impress upon offenders. The child pornography offenders are creating real victims. Is a penny going to impress on anybody that they've victimized somebody? It does not have to impress upon... The amount does not have to impress upon offenders. That is not anywhere in 2259. That is not one of the... I'm talking about what the Supreme Court's told me before heading Keynote 18. And the sentence right before that is Congress's aim under the statute. The whole point of this and the point of the legal causation here is to impress upon defenders they've made real victims. Yes, and... A penny going to do that? Well, first, the fact that these people are serving incarceratory sentences of well over 10 years in most circumstances, I think would impress upon them that they're a real victim. The Supreme Court said the restitution awards calculation under our approximate cause test that we're adopting must make real the victims to them. But it also says that you cannot... The essential holding is that it says Congress has promised victims... So that's dictated to? Excuse me? Is that all dictated to? No, I mean, this is a reversion back to its essential holding where it says that Congress has not promised victims full and swift restitution at all costs. To be sure, the statute states a strong restitutionary purpose, but the purpose cannot be twisted into a license to hold a defendant liable for an amount drastically out of proportion to his own individual causal relationship... So that's holding, but this is not? It's a reiteration of the whole... Can I ask you about another part of the opinion? Yes. Which is the court says, in considering this question of the relevant denominator and how much you spread the losses, the court says that you should do that in a way that enables the victim to someday collect restitution for all of her losses. Right. Where is that, Your Honor? That's on 462, right before letter C, the last paragraph in B. And if you use the denominator that you want to use that's key to number of viewers, number of images, whatever it is, in a world where everyone agrees most of the viewers will never be caught, no victim will be able to be made whole. But the court itself says that you need to take into account people who, of course, will not be caught and convicted. Those are the court's words. I agree with you, there's a lot of tension in here. Yes. But this is a pretty specific, it seems like a pretty specific directive to pick a denominator that's going to enable some ultra-vigilant victim who wants to sue everyone in the world who might be convicted to be made whole. But the very next part of that sentence is, but it makes sense to spread payment among a larger number of offenders in amounts more closely proportional to their respective causal roles and their own circumstances so that more are made aware through the concrete mechanism of restitution of the impact of child pornography possession. Well, you think the reality of this opinion is, it's on the one hand, on the other hand, and I get you, you're serving your client well by citing the portions that favor your client. But there's plenty, you have to acknowledge there's plenty of other language for every, don't do this to defend them, but make sure you do this for victims. That's just how this opinion is written. I understand, and there's a reason. Your Honor, I believe that there's a reason for that, and that's that I don't want to leave here without saying it. It is in my briefs. But this issue as to how to determine the amount of restitution was not fully briefed by the parties. The government's brief spent a paragraph at the very end of its brief. I understand, but we are little people in this process. We're bound by what the Supreme Court says, and we take quite seriously, even DICTA. You've read something someone might characterize as DICTA. I don't know how you can pick, pro-defendant stuff is not DICTA and pro-victim stuff is DICTA, but taking it as a whole, it seems to me it's meant to tell what we mean by proximate causes. None of it's maybe DICTA, because it may be saying, here's what we mean by proximate causation, which is a legal conception. What we mean by proximate causation is balance these concerns. Balance the concerns about making sure that we are attributing to defendants responsibility for what they have done and charging them for it and making them realize the costs of their activities. And doing our best to make victims whole may not be perfect for either side in this process. And it seems to me what the district court did here was take these factors, went through the factors, acknowledged the minor role, and came up with an assessment. And I'm having trouble understanding what legal error we can point to in the district court's analysis. There is no analysis. The district court didn't engage in analysis. The district court went through the Paroline factors, went through and found, as Paroline says, what type of role did this defendant have, and continued from the prior finding. She previously found that $5,000 is too little. Based on her own admission that she specifically said that this is $5,000 in nominal damages and then cited the definition of nominal being not small, but where there is not evidence in the record. She said her damages are more than this. She said this underestimates her damages. And so if we take that as law of the case, I get that you can dispute it, but if we take that as law of the case or factual finding, then what did she do wrong? But this court told her to start to address the restitution issue anew. It vacated that award and said recalculate anew. Because what she had said is it's more than $5,000, but I can't figure out what it is. And we said stop. You can't give someone less than what you've said they're entitled to, and you have said she's entitled to more than $5,000. You can't give her less than what you know she's entitled to, so go back and do it again. That doesn't vitiate her determination that the damages were more than $5,000. But that's baseless. And she admits that it's baseless. She said that there was no evidence in the record for her to come to that conclusion. I don't think the district court's admitting that it's baseless because the district court's now given $7,500. If you can point to me where the district court says, I admit this is a baseless amount, I will speak to you. I think on remand after Monzell won when she ordered zero and said that the government didn't meet its burden and there was no way for her to calculate damages, I think that is a calculation. She's gone back. She's read the Supreme Court decision like we have, and she's gone through the factors the Supreme Court gave there. And she accepted factual. So if we're looking at specific errors, she accepted factual representations which are clearly erroneous. And she came to a conclusion that is substantively erroneous. If we just look at factual findings that the Paroline opinion takes into account, 11 times in Paroline the majority says that Amy has been damaged by thousands and thousands of individuals. So that cannot be squared with an award of $7,500, which would only mean that she's only been damaged by 400 and some odd individuals. It is inconsistent with the essential holding of Paroline, which if you strip everything away, the essential holding of Paroline is that a defendant cannot be held liable for damages that he did not proximately cause. Why don't we hear from the government and we'll give you some time in rebuttal. Good morning, Your Honor. May it please the Court. Eric Hansford for the United States. The District Court did not abuse its discretion in concluding that the $7,500 award here represented the relative causal role of the defendant in causing Amy's harm. The District Court recognized the correct law, recognized that Paroline was now the law, consulted the appropriate factors, and picked a number that's in line with what other courts have awarded. What do you think was the District Court's reasoning? So I think the District Court's reasoning is exactly what Paroline suggested District Court should do, which is start with, by trying to figure out the aggregate losses, then go through those seven Paroline factors that the Supreme Court suggested District Courts could go through, and then consult other awards, which the District Court did here. So I think the District Court did go through. The District Court checks boxes, but it says at the end of its analysis, $7,500 is a reasonable award because fill in the blank. I'm having trouble filling in the blank. So I don't think that the Unless it's this, here are five random awards, and I'm averaging the point. So I'd say two things. First is I think that it's unfair to the District Court here to suggest that the District Court was just picking five random awards and averaging it. Judge Kessler had been dealing with this case for eight years. Is there any reason to think that those awards reflect similar cases? So I think those are five of the So first, I think the court has to look at the full record, which includes the lengthy transcript of the hearing that the District Court held here. The District Court is engaging with the defense on the government on all of these issues. And so I think the court can't just look at the District Court's opinion and think that's the entirety of the District Court's reasoning here. And those five opinions that the District Court cited, those were five of the 16 or so opinions that the government had cited in its brief. It's not clear why it is that the District Court thought those five opinions were compelling as to I mean, if you were doing a criminal sentence for, I don't know, robbery, and the District Court says, well, here are five robbery cases where the sentences have been five years, 10 years, 15 years, 20 years, 25 years. C.E.G. those five, I'm sentencing at 15. Would that be sufficiently reasoned? Yes, as long as the District Court is also going through the 3553A factors, which I think that the District Court did go through the parallel of that in terms of the paralleling factors. But it really didn't, right? It said, take the first three factors, right? Which all bear on what I'm thinking of as the denominator question, right? How many abusers are we talking about? District Court says the number of past convictions is about 200. Right. Which would produce a substantially higher award than she awarded. Right. And the District Court said there is no information on the broader number of past and future convictions. And there is no information on the still broader number of total offenders out there in the world. Right. And then no indication of how the 7500 might be reasonably related to, you know, she's analyzed all the factors, but the award doesn't seem to link up to the smallest number. And it can't link up to the larger numbers, because she said there's no evidence on them. So, I mean, there's analysis of the factors, but it doesn't seem to connect to the bottom line. Well, so I think the Supreme Court in paralleling is saying there is no mathematical way to get to a single correct answer. Maybe. Maybe. But what if they're saying, I mean, there is part two of the opinion, which says the ultimate question is the amount of harm approximately caused by this offense. Right. And if that were all there is, you would think that the relevant denominator is factor three, which is number of offenders in the world. And if this guy is, there's nothing to think he's worse. Right. It's one image, no distribution, no attempt to contact the victim, etc. Right. So he's one of however many offenders. We know there are thousands. Right. So what's, if you're just trying to do what the court said was the legal, the relevant legal question in part two of the opinion, why wouldn't you have to try to link the award to number of viewers? So I think that's what the dissent says in parallel. But there's a reason it's the dissent. That is what the majority is rejecting as part of its opinion. That's why the dissent is so vehement, that it should just be this $47 figure that Amy is suggesting. The majority is rejecting that. As Your Honor pointed out, the majority is saying restitution should eventually make the victim whole. Yeah. I mean, that's also in the portion of the opinion. And I just don't know how to reconcile those two, frankly. The court's broader reasoning seems to say that the relevant question is key to number of offenders, and that piece from the end of the analysis seems to say that it has to be key to number of convictions. Because that's the only denominator that will make the victim whole. So which do I follow? So I think it's that. I think what the Supreme Court is ultimately saying is this is inherently a discretionary question, that there's no formula that can get you to a correct answer. And so much as in sentencing, we have to defer to district courts. We may not know why a district court picks a sentence of 60 months or 66 months, and we don't have to go back and see and explain to ourselves why it is that the district court settled on that particular number. What we have to make sure of, just like in sentencing, is that the district court is recognizing the correct law, applying the factors that it's supposed to be consulting, and is giving a substantively reasonable answer, an answer that's in line with other opinions. We would note that four circuits have accepted the 1 over N method, which would have suggested a $16,000 award here. And the Fifth Circuit has adopted or accepted a modified 1 over N, which would have been $15,000 or $14,000 here. So these awards are very much in line with what other circuits are. In other words, one of the reasons we have sentencing guidelines is to limit discretion. All right, so I wondered if you were going to raise that sentencing argument. Here, there's this proximate cause standard. So it's a little different, it seems to me, than a judge who the person's already been convicted, there's no proximate cause issue. It's just who is this defendant, what do I think about him? And because of the disparate sentences, we now have sentencing guidelines, advisory only, but what I'm trying to understand is if the award can't be arbitrary, is the Supreme Court simply saying, so long as the district court acknowledges that it has considered these factors, then we will rely on the good judgment of the district court. I think that's generally what the Supreme Court's saying. So if that's true, then why aren't we headed toward the same situation that led to the sentencing guidelines, where you have a judge in Oregon who awards $50,000, and a judge in New Jersey who awards $0.06, and then when you see $7,500, it's just all of this difference, and I know defendants are different, but if you go through these factors, anybody who just possessed one image and was not involved in the distribution or all the other aspects of this, and you're back at Judge Millett's point about each image is a re-victimization, then does there need to be some understanding in what I thought the district court might have been doing, and she started out this way, as you know, is looking around the country to see what district court judges are doing in these cases to try to figure out what is a sensible approach here, because there's so many unknowables, and the problem with that is unless the district court says that, and it's not simply averaging, but it's I'm trying to figure out what a reasonable district court considering these factors would do, there is never going to be, or in a rare case, this linkage, and is that required to avoid arbitrariness? So I think there are a couple of checks on arbitrariness built into Paroline, and also based on that recent amendment of the statute, so built into Paroline, Paroline does have some substantive limits. It can't be a trivial award. It can't be a severe award, and Paroline, at the end of the opinion, does encourage district courts to check on other district court opinions, what's being awarded elsewhere, and so I think that the 1 over N method, which has been upheld in four circuits, plus the modified version in the fifth circuit, that's a suggestion of a reasonable method that is being applied. What's that? You didn't give that number to the district court here. That had been given to the district court here in the Monzell, I believe in the Monzell 2 briefing. Either the Monzell 1 or the Monzell 2. Has that been changed in the interim? The district court, I mean, the denominator had changed. We did not offer that number. I thought you took the position that the number was 197, I think, and that the district court should use it. We did not take that position. In the very most recent briefing, we took the position that the number was 197, that that is the first Paroline factor that the district court should consult. But we did not offer the 1 over N formula, which the district court had already rejected. But the district court, I believe in the transition... That was the only number you gave that could have served as a denominator. I think that's right. And so the district court, it would have been kind of simple division for the district court to find that number. So suppose, hypothetically, on this set of facts, the district court, in looking at all the factors, said, you know what? One thing I do have is these... Is it NEMIC? Is these NEMIC statistics? And I know that there are about 5,500 cases where actual investigations have produced identified images of Amy. So I'm going to use that number as my denominator. It's a very conservative estimate of the number of offenders in the world. I'm going to use that as my denominator. It obviously links up to this idea of proximate cause. And when you do the division, you get $600. District court awards $600. We're up on appeal. Are you going to defend on all of these same arguments? District court has discretion. It can pick factor one, two, or three for the denominator. There's no one right way to do it, so affirm. So to the best of my knowledge, we have not failed to defend a case like that. So why doesn't that produce the... lead you right into Judge Rogers' concern, which is 7,500 is fine, 600 is fine, notwithstanding the order of magnitude difference? So first is I think that's not an ongoing problem, given the recent amendment of the statute. Congress has now set a floor of $3,000 on restitution awards. So I think that's going to... It may not be a recurring problem, but... Sure, there are certainly cases that are pending that would force the court. But I do think that what the Supreme Court is ultimately saying is that there's a range of discretion for district courts to apply. And in some ways, we are in a free guidelines world where there aren't fixed numbers. And so I think at that point, the district court does have... We just have to defer to district court's discretion. Do you believe the United States' position that that denominator should include defenders from around the world that the statute doesn't apply to, and there's no basis whatsoever to think the victims can go get compensation from them, or should be expected to get restitution from them, or would it be the government's position that this is a domestic criminal statute and we're going to look at domestic offenders for the end? Because really, if you go internationally... I don't understand that. That completely throws overboard the concept that we have any hope of getting remotely near compensating these victims. Right, which I do think Paroline repeatedly says these victims should be fully compensated. So I do think that would be an issue. These are domestic statutes, so why wouldn't we look to domestic offenders from which there will be a legal regime to obtain restitution, in theory at least. Right. I do think that the Department of Justice will defend a variety of approaches that district courts would take on. No, no, you said defend a variety, but are you agreeing that you would defend looking around the world? So I haven't... I don't know the Department of Justice's specific position on that question. I do know that we will defend a variety of positions. I don't think that's normally what we're urging in the district courts. And we are arguing... Does your 1N... I had thought it included domestic arrested offenders. Does it include international offenders? So 1 over N is only for defendants who have been convicted in order to pay restitution to a... In the United States? In the United States. I don't know what other countries do. Maybe someone else orders it as well. I have no idea. Right. If there were other countries that were ordering restitution to Amy, then I think potentially that could have to be taken into account because she can't be recovering more than her total outstanding losses. The Department's position is, and the new statute makes clear, once she actually collects her full outstanding losses, she cannot continue to collect restitution. So it could be that if there were international awards of restitution for the covered conduct, that would still be part of the same aggregate causal large number, 3.263 million. Do you think Paroline compels that? I think it's part of Paroline that the government's burden... Part of Paroline can compel about anything Sure. But Paroline says that the government's burden or when the district court has to award restitution is when the defendant has the victim's images and the victim has outstanding losses caused by the traffic... There's always criminal cases that say we have criminal statutes we presume they need to operate within domestic orders and that that is the framework within which Congress is acting. I think that's right. I certainly think this court does not have to resolve that question in this case and it is the department's position that there is no way to estimate the number, the total number of offenders in the world in a reliable way, a reasonably reliable way. Paroline recognizes that possibility and it phrases it as any available and reasonably reliable... Would you take as a given... Would you take as beyond reasonable dispute that the number of offenders in the United States numbers at least in the several thousands? I think Paroline says that as to Amy specifically, so yes. So then you either have to be willing to defend awards that will be an order of magnitude lower or you have to say that it's legal error to key the denominator to that number. I think that's right and I do think... Well, so which is it? Would you defend that? Is that approach within the discretion permitted by Paroline? I would think that that approach would be within the discretion permitted by Paroline and I do... District Court says I don't know what the number is but it's at least 5,000 so I'm going to use 5,000 as my denominator. That sentence, I haven't done that division but that number would get affirmed. That is my... My sense is that the department would defend that calculation and the defense does point to a case where there was a stipulated restitution amount where the defense and the prosecution jointly agreed to it but use that NCMEC number as the divisor. Do you agree that number's relevant? That's about investigation. I think that... It's not an arrest number. So I do not think it is an appropriate... If we were in the District Court, we would not be arguing for that as a divisor because... What would you be arguing for? Would you be arguing that it's wrong to use that? I think in the District Court, we would be arguing that that would be... That would run into the problem of trying to fully compensate victims. That there are not going to be 5,000 people who are going to be paying any restitution so using that as the divisor is not going to be making any hole. But whether we would defend that on appeal if the District Court disagreed with us, I think is a... Does the government agree that each view is a re-victimization? Yes. Then I've been curious about why we're counting offenders and no one bothered to ask how many times Mr. Manziel looked at this picture. I think that we don't have... A record as to how many times he looked at the picture. I think it's unclear whether technology can always actually reflect that. Right, but to the extent someone goes, well, it's justified by the number of offenders, that might not even be the best baseline because that's grossly underestimating the number of views. Right. So we're already undershooting with even the 1N method. I think that is potentially true. Right. Then I'm still trying to figure out, because it's my understanding of the factual history here, is that Amy had received treatment for the abuse by her uncle and sort of pre-teen or early teen years was doing better until she learned about the fact these images are available through, I guess, the first notification about an offender who had been found with her images. Right. And that sent a spiral down. Right. So was that person who was found to have viewed her images responsible for more than the 1N? Because that's the one that sent her spiraling down. I think it's... I think it would depend on the factual circumstances and I don't know who that person was. Well, I'm talking about the very case. That's, you know, if we believe that each of these are pre-victimization, and it certainly seemed to happen, and we have good evidence of that in this case because she spiraled down upon learning that not only had she obviously been through the abuse, she knew, but that in fact now these images are out there and at least one person had looked at them. Right. And that set off a whole new round of need for treatment and difficulties and problems in her life. Right. I think it's not entirely clear whether it's that one person looking at it or whether it's the knowledge that this is out there and likely to remain out there. I think it's more the latter, certainly as described in the Supreme Court's Paroline opinion, that it's the knowledge that this is out there, she can't know who has viewed this, and that kind of fear about that. So it's the larger trafficking. Were you able to tell in cases how someone acquired, say how Mr. Monzel or someone acquired her picture, they could acquire it by abusing some child and trading pictures themselves or trading or asking? I'm sure we've seen all manner of horrific behavior designed to acquire more and more and feed the desire for these photos. Right. Is there any information, Inspector, about how he acquired it, how long he had it, anything like that? Not to the best of my knowledge. Do we know if he traded her image? So I think he was not charged for distributing her image. But he distributed other images. Yes. So if he got hers in a trade, he may not have traded her particular photo, but got it as part of his distribution process, trading something for it? I think we can just say that the record doesn't reflect how it is that he got her. I was just curious because he had been charged with distribution, so I was curious how he knew that no distribution was involved with respect to her photo because he had to do something to acquire it. Right. So I don't think we can say that he did not distribute her image. It's just that the record does not show that he did distribute her image. Okay. If there are no further questions, we would ask the Court to affirm. Thank you. Just very quickly, I wanted to make the point that concentrating only on identifiable or those defendants that are convicted really flies in the face, I think, of Paroline essential holding and also ignores the fact that in the very little briefing on this issue, the very little briefing on this issue, the government did put forward factors that it felt courts could consider. It put together factors, and two of the factors that it did not include but the Supreme Court specifically included to the government's list were please consider future offenders, please consider the broad number of offenders, even those who will not be caught and convicted. So the Supreme Court considered what the government, the factors that the government had put forward and added those two factors as suggestions for courts to consider. And to just ignore that aspect, which is repeated throughout its opinion, I think would be inconsistent with the essential holding of Paroline. Second, with respect to guidelines, by no means do I think an average, looking at what the average of wards of different courts have done, even with respect to Amy, because we don't know what methodology they used. We have no idea whether those were even awards that were litigated. But as a point of fact, Chief Justice Roberts, in his dissent, reports that pre-Paroline, the average award to Amy was $5,000. The average award. That includes awards that were of her full damage because it was pre-Paroline. So in this sense, we have Mr. Munsell, who possessed one image, did not distribute it, is among, per the district court's factual finding, the least culpable of defendants, and yet he is above, he somehow is above this national average. So again, I don't embrace the average, but as a point of fact... Do you agree that your client had to trade or pay something to come into possession of this image? Absolutely not. These images are often posted on websites. There's specific websites where they are just posted and available for download. There does not need to be a trade for this. Does someone have to pay to get access? No, no. One of them is called LimeWire. No, they download them. And what is very interesting about this... They're free? Yes, yes. I mean, as far as I know, I don't... Certainly in this case, there is no evidence that there was any pay. But there's... I mean, that's one of the ways. I don't know that that's how he came into possession of this. We don't know. Sometimes they are just... There's two people talking on the Internet, and one, because they're sad and lonely, or trying to make friends with the other, sends his cache of child pornography. And to be clear, what happens is... It's a cache of child pornography. And there's really no way to know whether Mr. Monzel looked at any particular images or not. He had these images. He was muted every day for some half a year at a time. Yeah, we don't know. And it's not that he looked... I don't know this for a fact, but generally the way these things happen is... It's not like they're looking through a catalog and saying, I want that one, that one, that one. It's just, this is the cache that I'm downloading, and this is what's available out there. So I want to be clear that this was the nature of what happened here. So it should sound like they're not being all that impressed with the consequences of your child pornography crimes. It was just a cache of photos. She was one in there. Well... Sounds like he's not so impressed, like I said, with the consequences of his crime, like the Supreme Court said he should be. He certainly is impressed by his incarceratory sentence. The Supreme Court said the restitution is meant to impress them with the real world costs of their crime. The cost to a victim of their crime. It is one of the effects of a restitution award, certainly. But 2259 is the statute that we were dealing with. It's not, in fact, a purpose of the restitution award. But there's nothing in 2259... I mean, the Supreme... We've decided that if it comes to the conclusion that there's a lot of internal inconsistencies in the Supreme Court's opinion in Paroline. But again, there is one essential holding. And then there's also the statute, which specifically enumerates the categories of harm that a court is allowed to award. One of them is not punitive damages. It's not. There are specific categories. And it's harm that Amy alleges to be $3.2 million. Again, it's a confined universe. And so the last thing I would want to say is we did write a full... Our brief in Monzell 2 was a full dissection of 1 over N. I hope that that is not what is at issue here, because that wasn't what was raised below. It wasn't what we concentrated our briefing on, either below or here. I could go through a litany of issues with 1 over N, one being the fact that even though that number does not include convictions where a restitution award was not ordered for any number of reasons. One, because for whatever reason the victim withdrew her request. One, because the victim never made the request. You'll see in the record that Amy reports that she was notified of 733 cases involving her image. And she only requested in a certain amount of cases. And one being outside settlements. So what happens is she'll come to a settlement with a defendant. They'll settle on their award. And then she'll withdraw her request in the criminal case. And so then that's not included in N. N doesn't include state cases. It's a federal case number. It's based on self-reporting by the DOJ. And the government below agreed that it was most likely an underestimate of even what they represent it to be. So if N is in any way a number that the court is considering to either judge the court's $7,500 award by or considering going forward, I submit that we really haven't had the opportunity in this case to dissect N and that it shouldn't be something going forward because it is an absolute fiction. Let me just ask you, there's this new statute, the Amy, Vicki, and Andy Child Pornography Act. Yes. Which does that $3,000 baseline. Yes. Obviously, if it were $10,000 baseline, it couldn't be applied to your client under ex post facto principles. But because it's lower, should that play any role in how we analyze this case? I'm not sure what to do with it. Maybe we should just ignore it. No, I mean, that $3,000 was set. There's no legislative history on this statute. There's no markup to the bill. It was passed by unanimous consent. I'm just asking what we should do with it. Well, I think that all it does is show that $3,000 was, Amy was at the table negotiating or setting the statute, that $3,000 was something that she accepted. We don't have evidence for that. No, but we know that. Lots of people negotiate lots of things and it doesn't show up on a final bill. No, it's true. We also know that there's a reason that Congress amended the statute, and it's because it allows for the awards that are lower than that. So this sets a base of $3,000. It does not apply to him going forward. But assuming that that is now a floor, again, he is at the floor. He should be at any floor being the possessor of one image and with no other aggravating factors at all. All right. Thank you. Thank you. I take the case under advisement.
judges: Rogers, Millett, Katsas